UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES,<br>    *Plaintiff*,<br><br>v.<br><br>PAUL GILENO,<br>    *Defendant.* | No. 3:19-cr-161-(VAB)-1 |
|---|---|

**RULING AND ORDER ON MOTION TO SUBSTITUTE REMAINING SENTENCE OF IMPRISONMENT WITH HOME CONFINEMENT**

Paul Gileno ("Defendant") requests a modification of his sentence, to substitute the remainder of his imprisonment with home confinement. Mot., ECF No. 26 (Mar. 17, 2020) ("Def.'s Mot."). The Government opposes the Defendant's motion. Gov't Opp'n, ECF No. 27 (Mar. 17, 2020) ("Gov't Opp'n").

For the following reasons, the motion to reconsider is **DENIED** without prejudice.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On November 13, 2019, after pleading guilty to one count of wire fraud under 18 U.S.C. § 1343 and one count of tax evasion under 26 U.S.C. § 7201, Mr. Gileno was sentenced to one year and one day of imprisonment, two years of supervised released, a special assessment of $200.00, and restitution. Judgment, ECF No. 22 (Nov. 13, 2019). On January 15, 2020, the Court entered a restitution order requiring Mr. Gileno to pay restitution in the amount of $3,117,582.67. Restitution Order, ECF No. 25 (Jan. 15, 2020).

Mr. Gileno voluntarily surrendered and began his term of incarceration on January 6, 2020. Def.'s Mot. at 1; Judgment, ECF No. 22 (Nov. 13, 2019). He is incarcerated at the Federal Correctional Institution at Schuylkill, in Minersville, Pennsylvania. Def.'s Mot. at 1. The Bureau of Prisons (BOP) "has informed Mr. Gileno that he will be discharged to home confinement

1

sometime in early October of 2020, taking into consideration institutional earned good time credit." *Id.* at 2.

On March 17, 2020, Mr. Gileno moved for a modification of his sentence, to substitute the remainder of his imprisonment with home confinement. Def.'s Mot.

On the same day, the Government filed a memorandum in opposition to Mr. Gileno's motion. Gov't Opp'n.

## II. STANDARD OF REVIEW

As of December 21, 2018, a court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). The Court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for

2

> the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* The Court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a Court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *Rivernider*, 2020 WL 597393, at *2 (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *Ebbers*, 2020 WL 91399, at *4 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

Mr. Gileno seeks to modify his sentence by substituting the remainder of his sentence with home confinement. Def.'s Mot. He argues that he "has encountered unforeseen circumstances that have necessitated him to file this motion." *Id.* at 1. These include his personal physical health issues, mental health issues, and concerns about the implications of the COVID-19 pandemic for incarcerated populations. *Id.* at 3–8.

Mr. Gileno states that he continues to have medical issues related to his 2003 back injury, which are reflected in the Presentence Investigation Report, ECF No. 14 (Oct. 4, 2019). Def.'s Mot. at 3. He "continue[s] to experience chronic burning sensation and severe nerve pain in his left leg" and has "had reoccurring and long-lasting muscle spasms in his left leg and foot." Def.'s

Mot. at 3. Mr. Gileno asserts that his "physical disability and pain has only intensified" during his two months of incarceration. *Id.*

> He describes scheduling a medical appointment at the facility as a nearly impossible task. The Schuylkill facility has a limited staff of paramedics assigned to the medical unit for one hour each morning, and a physician shows up even less frequently. Mr. Gileno characterizes the level of care there as "beyond bad".

*Id.*

Mr. Gileno also argues that his lifelong anxiety has worsened during incarceration. *Id.* at 3-4. He states that although he was prescribed Xanax daily for 16 years prior to his incarceration, "not just to control his anxiety, but also to cope with pain management and to help him sleep," he can the BOP allegedly does not prescribe Xanax. *Id.* Instead, BOP has allegedly substituted Klonopin as alternative medication, which Mr. Gileno reports causing him "negative reactions." *Id.* at 4. Therefore, he states that he cannot take the medication, and as a result "his anxiety level has spiked significantly. . . . [and] his ability to get any sleep has also been compromised, and is now virtually non-existent." *Id.*

Finally, Mr. Gileno reports further increased anxiety and family concerns as a result of "the recent developments with COVID-19, which is currently gripping our nation's attention, . . ." *Id.* Mr. Gileno's "Counsel submits the conditions of Mr. Gileno's confinement at FCI-Schuylkill creates [sic] the ideal environment for the transmission of contagious disease," *id.* at 5, and Mr. Gileno contends he is at a heightened risk due to "his compromised medical condition," *id.* at 7, referencing his "high blood pressure, high cholesterol, asthma, and allergies," *id.* at 4. He also notes that his wife and young family have experienced financial constraints making it difficult for them to make the three-and-a-quarter hour car trip to visit him. *Id.* at 7. He argues that this situation has worsened since Mr. Gileno's wife cannot currently work to earn income because she is home caring for their children

5

whose schools are now closed due to the coronavirus pandemic. *Id.* at 7-8. "Having Mr. Gileno home to care for his sons would alleviate the financial burden the family must now confront." *Id.*

The Government opposes Mr. Gileno's motion. The Government argues that "[n]one of the grounds asserted by the defendant are a bas[i]s for a sentence modification . . . ." Gov't Opp'n at 1. The Government also "notes that the BOP has developed an extensive action plan . . . to address the COVID-19 pandemic." *Id.* (citing Fed. Bureau of Prisons COVID-19 Action Plan, Fed. Bureau of Prisons (last updated Mar. 13, 2020), *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp).

The Court agrees.

As a threshold matter, Mr. Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence.

In any event, Mr. Gileno's motion does not clearly meet the requirements for modifying a sentence for "extraordinary and compelling reasons."

U.S.S.G. § 1B1.13 provides that extraordinary and compelling reasons exist to support compassionate release for a defendant based on his medical condition where the defendant is "suffering from a terminal illness;" or is (i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Commentary (1)(A).

Mr. Gileno has not shown that his medical issues, which remain largely the same as when he was sentenced, "substantially diminish [his] ability . . . to provide self-care" within the correctional facility. *Id.* Courts grant sentence modifications or reductions based on defendants' medical conditions where those conditions are extremely serious, if not life-threatening. *See, e.g.*, *Ebbers*, 2020 WL 91399, at *5 ("The Medical Condition Note . . . highlights 'terminal illness' and 'serious conditions and impairments,' including 'advanced dementia' and other diseases associated with an 'end of life trajectory.'"); *United States v. Beck*, No. 1:13-cr-186-6, 2019 WL 2716505, at *12 (M.D.N.C. June 28, 2019) (granting compassionate release for 47 year-old defendant who had cancer that was not timely treated); *United States v. Gray*, 416 F. Supp. 3d 784, 791 (S.D. Ind. 2019) (granting compassionate release to 64-year old defendant who had been hospitalized for multiple procedures, including one for a liver tumor); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (granting compassionate release where defendant was wheelchair bound, blind, required 24/7 care, and was given a prognosis of 18 months to live); *cf. Rivernider*, 2020 WL 597393, at *5 (finding that the defendant's "heart condition is not nearly as grave as the medical conditions that have been found to justify compassionate release in other cases," noting that the defendant has not demonstrated that his heart condition 'substantially diminishes [his] ability . . . to provide self-care'"). Mr. Gileno has not shown that his medical issues are sufficiently serious to modify his sentence to home confinement.

With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno. The Court takes judicial notice of the fact that public health recommendations are rapidly changing.

7

*See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Cases & Latest Updates (last updated Mar. 17, 2020) ("This is an emerging, rapidly evolving situation and CDC will provide updated information as it becomes available, in addition to updated guidance."), *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/index.html. But at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated.

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** the motion for early termination of supervised release.

The motion is denied without prejudice to renewal upon a motion by the Bureau of Prisons on Defendant's behalf, or a showing that thirty days have passed since the Defendant submitted such a request, and a showing that Defendant's circumstances meet the requirements for "extraordinary and compelling reasons" to modify or reduce a sentence.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of March, 2020.

      /s/ Victor A. Bolden
      Victor A. Bolden
      United States District Judge