UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>v.<br><br>PAUL GILENO,<br>    *Defendant.* | No. 3:19-cr-161-(VAB)-1 |

**RULING AND ORDER ON SECOND MOTION FOR COMPASSIONATE RELEASE**

Paul Gileno ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Second Mot. for Compassionate Release, ECF No. 29 (Apr. 13, 2020) ("Def.'s Mot."). On April 17, 2020, the Court held a telephonic hearing on the motion, Minute Entry, ECF No. 33 (Apr. 17, 2020), at which the Government, after having notified and obtained the view of the victim in this case, informed the Court that it does not object to Mr. Gileno's motion.

Accordingly, for the reasons set forth below, the Court will **GRANT** Mr. Gileno's motion for compassionate release. He shall be immediately released from Bureau of Prisons ("BOP") custody to serve the remainder of his sentence on home incarceration.

**I.      BACKGROUND**

On November 13, 2019, after pleading guilty to one count of wire fraud under 18 U.S.C. § 1343 and one count of tax evasion under 26 U.S.C. § 7201, the Court sentenced Mr. Gileno to one year and one day of imprisonment, two years of supervised release, a special assessment of $200.00, and restitution. Judgment, ECF No. 22 (Nov. 13, 2019).

On January 15, 2020, the Court entered a restitution order requiring Mr. Gileno to pay restitution in the amount of $3,117,582.67. Restitution Order, ECF No. 25 (Jan. 15, 2020).

1

Mr. Gileno voluntarily surrendered and began his term of incarceration on January 6, 2020. Def.'s Mot. at 1; Judgment, ECF No. 22 (Nov. 13, 2019). He is incarcerated at the Federal Correctional Institution at Schuylkill, in Minersville, Pennsylvania. Def.'s Mot. at 1. The BOP "has informed Mr. Gileno that he will be discharged to home confinement sometime in early October of 2020, taking into consideration institutional earned good time credit." *Id.* at 2.

On March 17, 2020, Mr. Gileno moved for a modification of his sentence, to substitute the remainder of his imprisonment with home confinement, due to the COVID-19 pandemic and Mr. Gileno's health issues. First Mot. for Modification, ECF No. 26 (Mar. 17, 2020).

On the same day, the Government filed a memorandum in opposition to Mr. Gileno's motion. Mem. in Opp'n, ECF No. 27 (Mar. 17, 2020).

On March 19, 2020, the Court denied Mr. Gileno's motion to modify sentence without prejudice to renewal upon a motion by the BOP on Defendant's behalf, or a showing that thirty days have passed since the Defendant submitted such a request, and a showing that Defendant's circumstances meet the requirements for "extraordinary and compelling reasons" to modify or reduce a sentence. Ruling and Order, ECF No. 28 (Mar. 19, 2020).

On April 17, 2020, Mr. Gileno filed a second motion for release from custody. Def.'s Mot. He attached a letter from Melissa Montaruli, an advanced practice registered nurse ("APRN") who has been treating Mr. Gileno for asthma and other respiratory issues; medical records for Mr. Gileno from Western Connecticut Medical Group Pulmonary and Sleep Specialists; a letter from Michele Gargan, PsyD, a psychotherapist who has been treating Mr. Gileno since 2007; and a report from Dr. Jaimie Meyer, an Assistant Professor at the Yale School of Medicine and Assistant Clinical Professor at the Yale School of Nursing who has

served as an expert consultant and expert witness on infectious diseases in jails and prisons. *See* Def.'s Mem. Exs. A-C, ECF No. 29 at 18–38.

The Government represented at a telephonic hearing on April 17, 2020, that, after having spoken with the victim in this case, it does not object to Mr. Gileno's second motion for release.

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III.   DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Gileno seeks again to modify his sentence by substituting the remainder of his sentence with home confinement, and he supplements his earlier motion to modify with "additional medical documentation to establish that he falls in the high risk group under the

circumstances surrounding the COVID-19 virus, and that the conditions within the BOP are becoming more dire by the day." Def.'s Mem. at 2. He argues that he has established "extraordinary and compelling reasons" warranting a sentencing reduction. *Id.*

The Court agrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Norris*, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU) (Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection. Therefore, for the reasons set forth in his motion, I conclude that his medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence[.]" (internal citations omitted)); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma . . . . [Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related

ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (footnotes omitted)) ("COVID-19 presents a heightened risk for incarcerated defendants . . . with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease." (footnotes omitted)).

Mr. Gileno suffers from chronic asthma and other respiratory issues that put him at increased risk should he contract COVID-19. He has submitted evidence that he suffers from chronic asthma and has had multiple bouts of pneumonia as an adult. Def.'s Mem. at 4. Before his incarceration, Mr. Gileno was treated for asthma and "hyperactive airway disease" and is prescribed multiple medications as part of this treatment. *Id.* A letter from APRN Mitchell states that Mr. Gileno's medical history "of seasonal allergies and asthma [ ] put[s] him at a higher risk of respiratory complications." Def.'s Mem. Ex. A., ECF No. 29 at 19. In addition, Mr. Gileno suffers from "chronic remitting pain as well as anxiety and depression resulting from his back injury in 2003," which he argues place him at increased risk during the pandemic. Def.'s Mem. at 5. Mr. Gileno's psychotherapist, Dr. Gargan, stated that his "physical and psychiatric compromise place him at serious risk for a dangerous reaction to the COVID-19 virus." Def.'s Mem. Ex. B, ECF No. 29 at 29.

Mr. Gileno also argues that COVID-19 is spreading throughout the federal prison system and "with every day that passes, BOP identifies additional cases at additional institutions." *Id.* at 7. He also notes that Congress and the Attorney General of the United States have now asked the BOP to allow for the immediate release of elderly, non-violent inmates, "[r]ecognizing the

unique risks that correctional facilities pose to both inmates and employees[.]" *Id.* at 8–9. Additionally, public health experts have urged for immediate release of incarcerated individuals even from institutions that do not yet have any confirmed cases because "'[o]nce a case of COVID-19 [is] identified in a facility, it will likely be too late to prevent a widespread outbreak.'" *Id.* at 11 (quoting Letter from Yale School of Medicine Faculty to Justice Andrew J. McDonald, Connecticut Supreme Court, submitted by the ACLU of Connecticut (Mar. 27, 2020), *available at* https://www.acluct.org/sites/default/files/field_documents/2020-03-26_letter_to_committee_requesting_emergency_alteration_of_rules.pdf); *see also* Def.'s Mem. Ex. C, ECF No. 29 at 37 ("The horizon of risk for COVID-19 in these facilities is a matter of days, not weeks. Once a case of COVID-19 [is] identified in a facility, it will likely be too late to prevent a widespread outbreak.").

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Gileno's counsel represented at the telephonic conference that he submitted a request to the Bureau of Prisons to bring a motion for release on his behalf, but that thirty days has not passed.

Numerous district courts in the Second Circuit, however, have waived the exhaustion requirement during the COVID-19 pandemic. *See, e.g.*, *Norris*, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU); *McCarthy*, 2020 WL 1698732, at *3–4; *United States v. Zuckerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *2–4 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-

7

179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at * 2–3 (S.D.N.Y. Apr. 1, 2020).

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of completing the administrative process may be waived 'if one of the recognized exceptions to exhaustion applies.'" *McCarthy*, 2020 WL 1698732, at *3 (quoting *Perez*, 2020 WL 1546422, at *2). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences;" (2) where "the administrative process would be incapable of granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

District courts have found that all three exceptions apply in cases where incarcerated individuals, due to their age and underlying health issues, seek compassionate release in light of the spread of COVID-19. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4 ("Even a few weeks' delay carries the risk of catastrophic health consequences for [Mr.] McCarthy. Second, given the brief duration of Defendant's remaining term of imprisonment, the exhaustion requirement likely renders BOP incapable of granting adequate relief, as his sentence will likely already have expired by the time his appeals are exhausted and would certainly already have expired by the time the thirty-day waiting period ends. Finally, and obviously, [Mr.] McCarthy could be unduly prejudiced by such delay. Clearly, given his conditions, [Mr.] McCarthy is at great risk of succumbing to COVID-19."); *Perez*, 2020 WL 1546422, at *3 ("Here, even a few weeks' delay carries the risk of catastrophic health consequences for Perez. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a

rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.").

Having considered the matter further, the Court joins these other district courts and waives the exhaustion requirement for Mr. Gileno, as undue delay in his release could result in catastrophic health consequences for him in light of his underlying health conditions and the COVID-19 pandemic. An unyielding view of the exhaustion requirement is likely to render the BOP incapable of granting adequate relief, and, in light of Mr. Gileno's vulnerability to COVID-19, he would be unduly prejudiced by delay. As a result, the Court's previous decision on Mr. Gileno's earlier motion, which required exhaustion,[1] is no longer tenable.

As explained above and set forth in his motion, Mr. Gileno has demonstrated that he suffers from asthma and respiratory conditions that place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated. Reduction of his sentence to home incarceration is consistent with U.S.S.G. § 1B1.13 because extraordinary and compelling reasons warrant the reduction, and because the terms of the sentence modification ensure that Mr. Gileno will not pose a danger to the safety of any other person or to the community (Mr. Gileno will be on home incarceration during the time he would have been incarcerated, and there is nothing in this record suggesting that he would be a danger to any other person or the community).

Moreover, at the telephonic hearing, the Government represented that it does not object to Mr. Gileno's motion, and that the Government has not only notified Mr. Gileno's victim but also spoken with and learned that the victim does not object to his request.

---

[1] The Court previously stated: "Mr. Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence."

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and reduces Mr. Gileno's sentence to home incarceration for the remainder of his sentence.

Upon release, Mr. Gileno shall immediately return to his home. He shall be on home incarceration until his original BOP release date of November 12, 2020. All other special conditions of supervision from the November 7, 2019 judgment shall remain in effect.

Upon returning to his home, Mr. Gileno shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of April, 2020.

                                                                  /s/ Victor A. Bolden
                                                                  Victor A. Bolden
                                                                  United States District Judge